UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

v.

JOHN WILLIAM MILLS,
　　　　*Defendant-Appellant.*

No. 03-4153

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CR-02-449)

Submitted: September 29, 2003

Decided: November 21, 2003

Before WILKINSON, WILLIAMS, and GREGORY,
Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

W. Edward Riley, IV, BOONE, BEALE, COSBY & LONG, Richmond, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Ronald L. Walutes, Jr., Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

John William Mills was convicted in a bench trial of possessing a firearm after being convicted of a misdemeanor crime of domestic violence (MCDV), 18 U.S.C. § 922(g)(9) (2000), and was sentenced to a term of fifteen months imprisonment. Mills challenges his conviction, alleging that § 922(g)(9) is unconstitutional on several grounds. He also maintains that the district court clearly erred in denying him a sentence reduction for having possessed the firearm solely for lawful sporting purposes pursuant to *U.S. Sentencing Guidelines Manual* § 2K2.1(b)(2) (2002). We affirm.

A deputy sheriff was dispatched to Mills' home just before ten o'clock on the evening of February 18, 2002, responding to a report of shots being fired. The deputy spoke to Mills and to Andrew Drury, Mills' employee and neighbor. Both stated that Mills had consumed several beers that evening, became angry because his girlfriend was not present, put a stuffed teddy bear she had given him on the ground in his back yard, and shot the bear with a revolver. The deputy reported that Mills smelled strongly of alcohol when he was interviewed. Mills was initially charged in state court with unlawful discharge of a firearm, but the charge was dismissed shortly before Mills was indicted for the instant federal offense. Before he was tried, Mills sought dismissal of the indictment on constitutional grounds. When his motion was denied, Mills stipulated that he had three MCDV convictions, that the firearm was manufactured in Massachusetts, and that he shot the teddy bear.

### SENTENCE

Mills first asserts that the district court erred in refusing to reduce his base offense level pursuant to USSG § 2K2.1(b)(2). Guideline section 2K2.1(b)(2) provides that the offense level should be reduced

to 6 if the defendant possessed the firearm and all ammunition "solely for lawful sporting purposes or collection and [the defendant] did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition. . . ." At his sentencing hearing, Mills sought to convince the district court that he possessed the revolver solely for target shooting. The district court did not make a specific finding as to why Mills possessed the firearm or whether he was engaged in target shooting when he shot the bear. However, the court found that the incident occurred when Mills had drunk at least three beers and was under the influence of alcohol, if not intoxicated; that Mills fired twice at the teddy bear; that his house was not isolated from other houses and that his yard was not a safe place for target shooting. Under these circumstances, the district court found that the firearm was recklessly and unlawfully discharged.

The district court's legal determinations relative to sentencing are reviewed de novo and its factual findings are reviewed for clear error. *United States v. Daughtrey*, 874 F.2d 213, 217-18 (4th Cir. 1989). The court's determination that Mills unlawfully discharged the firearm, with which we agree, was a sufficient basis for denying him the reduction under § 2K2.1(b)(2). That guideline section succinctly states that a defendant who possessed a firearm solely for a lawful sporting purpose is not eligible for the reduction if he has used the firearm unlawfully.

## *DUE PROCESS*

### A.   *Lack of Notice*

Mills argues that § 922(g)(9) fails to provide adequate notice of defendant's change in status. This claim was not raised in the district court. However, a challenge to the constitutionality of a statute is reviewed de novo. *United States v. Sun*, 278 F.3d 302, 308 (4th Cir. 2002).

The statute provides that: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to possess in or affecting commerce, any firearm or ammunition. . . ." 18 U.S.C. § 922(g)(9). Mills relies primarily on *Lambert v. California*, 355 U.S. 225, 229 (1957) (finding due pro-

cess violation in conviction under Los Angeles city ordinance when
defendant had no notice that his conduct might lead to prosecution).
He notes that the penalty for a violation of § 922(g)(9) is set out in
§ 924(a)(2) as being applicable to "[w]hoever knowingly violates sub-
section . . . (g) of . . . section 922. . . ." Mills argues that the language
is ambiguous and may indicate that Congress intended to punish only
a prohibited person who was aware that his possession of a firearm
violated the statute. Thus, he contends that he may be convicted of
violating § 922(g)(9), but may not be punished for his crime. His
claim is misplaced because we have held (in circumstances similar to
Mills') that a person who has been convicted of a MCDV has suffi-
cient notice that he may be subject to special regulation with respect
to possession of firearms. *See United States v. Mitchell*, 209 F.3d 319,
323 (4th Cir. 2000); *see also United States v. Barnes*, 295 F.3d 1354,
1367 (D.C. Cir. 2002); *United States v. Hutzell*, 217 F.3d 966, 968-69
(8th Cir. 2000).

Mills also relies on *Bryan v. United States*, 524 U.S. 184, 193
(1998) (holding that "the term 'knowingly' merely requires proof of
knowledge of the facts that constitute the offense"). He maintains that
his change in status as a result of the 1996 amendment of § 922 to add
the proscription against possession of a firearm by a person convicted
of a MCDV is a factual, rather than a legal matter. However, this
court has also rejected this claim. *Mitchell*, 209 F.3d at 322. There-
fore, Mills' argument fails.

### B.   *Irrebuttable Presumption*

Mills contends next that § 922(g)(9) creates a permanent irrebutt-
able presumption that he is incapable of reform because it does not
provide a way for him to regain his right to possess a firearm. Thus,
because the statute allegedly forbids Mills from regaining his right to
possess a firearm, it violates due process. *Vlandis v. Kline*, 412 U.S.
441 (1973). However, as the district court found, 18 U.S.C. § 925(c)
(2000) provides a mechanism by which a prohibited person may
obtain relief from his disability by making application to the Attorney
General. Mills argues that § 925(c) does not afford him any practical
relief because the Attorney General has delegated the authority to
approve applications for relief under § 925(c) to the Bureau of Alco-
hol, Tobacco, and Firearms (ATF) and, since 1992, Congress has not

appropriated funds to the ATF for processing such applications. Consequently, the ATF has routinely returned applications without acting on them, and judicial review of the ATF's failure to act on an application is not available. *See United States v. Bean*, 537 U.S. 71, 123 S. Ct. 584, 585-86 (2002). Thus, Mills explains, Congress has suspended the ATF's ability to act pursuant to § 925(c). *Pontarelli v. United States Dep't of the Treasury*, 285 F.3d 216, 231 (3d Cir. 2002) (finding that Congress' appropriations ban was intended to suspend the ATF's review process).

Another provision that potentially allows Mills to regain his right to possess a firearm is 18 U.S.C. § 921(a)(33)(B)(ii) (2000), which provides that a conviction shall not be considered if it has been expunged, the person's civil rights have been restored, or the person has been pardoned. Mills argues that he cannot benefit from this provision because (1) Virginia does not take away an offender's civil rights for a misdemeanor offense and, thus, he cannot have his rights restored; (2) Virginia does not allow a MCDV offense to be expunged, *see* Va. Code Ann. § 19.2-392.2 (Michie Supp. 2003) (provides only for expungement of conviction of a "crime"); and (3) the likelihood of a pardon is very small. Nonetheless, Mills may request a pardon to regain the right to possess a firearm. Thus, his claim that he is subject to a permanent irrebuttable presumption that he cannot reform must fail.

## *EQUAL PROTECTION*

Mills next argues that he was denied equal protection of the law because § 922(g)(9) deprives a MCDV offender of the right to possess a firearm while others who have committed misdemeanors retain this right. He concedes that § 922(g)(9) "may have" a rational basis to a legitimate government goal. *See United States v. Lewitzke*, 176 F.3d 1022, 1026-27 (7th Cir. 1999) (finding rational basis for depriving MCDV offenders of firearms even though others convicted of misdemeanors may also pose danger to society). Mills contends that § 922(g)(9) should be subject to strict scrutiny. However, MCDV offenders "are not a suspect class for equal protection purposes," and no fundamental right is implicated when such an offender is deprived of the right to possess a firearm. *Barnes*, 295 F.3d at 1368. Mills has failed to make any showing that MCDV offenders are a suspect class.

Mills maintains that there is no rational basis for a law that provides no realistic means of regaining the right to possess firearms in states that do not take away civil rights for misdemeanor convictions, but permits restoration of that right in states where a person convicted of a misdemeanor loses his civil rights. This court and others have confronted this issue and concluded that "Congress consciously made the decision to accept anomalous results—like a result that favors incarcerated misdemeanants over misdemeanants that were not incarcerated." *United States v. Jennings*, 323 F.3d 263, 274 (4th Cir. 2003), *petition for cert. filed*, July 2, 2003 (No. 03-5280); *Barnes*, 295 F.3d at 1368. Therefore, this claim lacks merit.

## *COMMERCE CLAUSE AUTHORITY*

Mills contends that the enactment of § 922(g)(9) exceeded Congress' regulatory authority under the Commerce Clause and that the current interpretation of the phrase "in and affecting commerce" allows Congress to extend its authority to regulate any activity. He also contends that his actions had no effect on interstate commerce and that the government should be required to prove that his actions had a substantial effect on interstate commerce as an element of the offense. Mills relies on *United States v. Morrison*, 529 U.S. 598 (2000). However, this court has held that *Morrison* does not affect its prior decisions respecting the constitutionality of § 922(g). *United States v. Gallimore*, 247 F.3d 134, 138 (4th Cir. 2001). Therefore, this claim also fails.

Accordingly, we affirm the conviction and sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*